UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**GEORGE L. RUSSELL, III**
Chief United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

September 24, 2026

MEMORANDUM TO PARTIES RE: Smith v. Credence Resource Management, LLC
Civil Action No. GLR-25-4118

Dear Parties:

Pending before the Court is Defendant Credence Resource Management, LLC's ("Credence") Motion to Dismiss the First Amended Complaint (ECF No. 19). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion.

**Background**[1]

This action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq. (Am. Compl. ¶ 1, ECF No. 16). Self-represented Plaintiff Gloria Smith alleges that she had an account with AT&T and that, after she closed the account, AT&T "retained [Credence] as a third-party collection agency to attempt to collect the balance owed on the closed AT&T account." (Id. ¶¶ 15–16). She alleges that Credence has furnished incorrect information to crediting agencies regarding the status of her AT&T account and that, in or around September 2025, she "filed a formal written dispute with TransUnion," identifying four inaccuracies regarding the "account status" of her AT&T account: (1) the account type was reported as "Open" even though the underlying account with AT&T had been closed; (2) the report did not contain the date of first delinquency; (3) the account number was inaccurate because it did not match her account number with AT&T; and (4) the report did not contain any payment history. (Id. ¶¶ 18, 22–38). According to Smith, TransUnion notified Credence of Smith's dispute and transmitted her "dispute narrative and . . . annotated credit report" to Credence. (Id. ¶ 21).

On October 7, 2025, TransUnion issued the results of the investigation. (Id. ¶ 46). Smith states that, after the investigation, only two "cosmetic, non-substantive fields" were updated and that the alleged errors in her account status remained. (Id.). Smith asserts that Credence did not conduct a reasonable investigation into the alleged errors and that, as a result, she was denied an Apple Card and has suffered lost credit opportunities, damage to her credit reputation, emotional distress, and mental anguish. (Id. ¶¶ 47–49, 61).

Smith filed a Complaint against Credence on December 15, 2025, alleging five counts under the FCRA. (Compl. ¶¶ 21–48, ECF No. 1). Credence filed a Motion to Dismiss on February

[1] Unless otherwise noted, the Court takes the following facts from the First Amended Complaint (ECF No. 16) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

27, 2026. (ECF No. 11). Smith filed an Opposition on March 12, 2026, (ECF No. 13), in which she opposed the Motion and requested leave to amend her Complaint if the Court found the Complaint to be deficient, (Pl.'s Opp'n Def.'s Mot. Dismiss ["Opp'n"] at 9, ECF No. 13).[2] On April 1, 2026, the Court issued an Order, finding that Smith's Complaint failed to state a claim under the FCRA. (Apr. 1, 2026 Letter Order at 2–4, ECF No. 15). In light of Smith's self-represented status, however, the Court granted Smith's request to file an amended complaint and denied Credence's Motion to Dismiss. (Id. at 4).

Smith filed the Amended Complaint on April 16, 2026, alleging the same five counts under the FCRA for Credence's alleged failure to conduct a reasonable investigation, failure to review all relevant information provided by credit reporting agencies ("CRA"), failure to report accurate information, and failure to have adequate reporting procedures in place. (Am. Compl. ¶¶ 64–83). Credence filed the instant Motion to Dismiss on May 6, 2026. (ECF No. 19). Smith filed an Opposition on May 20, 2026. (ECF No. 21). To date, Credence has not filed a Reply.

**Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Additionally, federal district courts must construe self-represented litigants' pleadings liberally, but doing so "does not transform the court into an advocate." United States v. Wilson, 699 F.3d 789, 797 (4th Cir. 2012) (quoting Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990)).

[2] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

**Analysis**

Smith's claims against Credence fall under § 1681s-2(b) of the FCRA, which covers the "[r]esponsibilities of furnishers of information to [CRAs]." (Am. Compl. ¶¶ 64–83); 15 U.S.C. § 1681s-2. Under § 1681s-2(b), once a furnisher of information receives notice that a consumer disputes the completeness or accuracy of any information the furnisher provided to a CRA, the furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the [CRA]" under § 1681i(a)(2) of the FCRA, and "report the results of the investigation to the [CRA] . . . ." 15 U.S.C. §§ 1681s-2(b)(1)(A)–(C). If the furnisher finds that the disputed information is inaccurate or incomplete, it must notify "all other [CRAs] to which [it] furnished the information and that compile and maintain files on consumers on a nationwide basis." Id. § 1681s-2(b)(1)(D). Additionally, the furnisher must modify, delete, or permanently block the reporting of any inaccurate, incomplete, or unverifiable information. Id. §§ 1681s-2(b)(1)(E)(i)–(iii).

To state a reasonable investigation claim under §§ 1681s-2(b)(1)(A)–(E), a plaintiff must show that (1) they "notified the [CRA] of the disputed information"; (2) "the [CRA] notified the defendant furnisher of the dispute"; and (3) "the furnisher then failed to investigate and modify the inaccurate information." Best v. Fed. Nat'l Mortg. Ass'n, 450 F.Supp.3d 606, 638 (D.Md. 2020) (quoting Alston v. Branch Banking & Tr. Co., No. GJH-15-3100, 2016 WL 4521651, at *6 (D.Md. Aug. 26, 2016)). Additionally, to survive a motion to dismiss, the plaintiff "must allege facts that, if true, show that her credit report contained inaccurate or incomplete information" and "that the inaccuracy or incompleteness is objectively and readily verifiable by the furnisher . . . ." Roberts v. Carter-Young, Inc., 131 F.4th 241, 252 (4th Cir. 2025). "[A] report is inaccurate not only when it is patently incorrect but also when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008) (citation modified).

Here, Smith alleges that she notified TransUnion, which then notified Credence, that the account number and type in Credence's tradeline (i.e., Credence's credit account as listed on Smith's credit report) were incorrect and that the tradeline did not include the date of first delinquency or any payment history. (Am. Compl. ¶¶ 20–38). Credence argues that Smith did not put Credence on notice that the account number and type were incorrect and did not put Credence on notice at all of the disputes regarding the date of first delinquency or the missing payment history. (Mem. L. Supp. Mot. Dismiss Pl.'s Am. Compl. ["Mot. Dismiss] at 4–5, ECF No. 19-1). Credence further argues that Smith fails to state how the account number and type were inaccurate, how Credence's investigation was unreasonable, the result of the dispute, or Credence's tradeline after the dispute. (Id. at 5).

The Court finds that Smith's allegations are insufficient to state a claim under the FCRA. Even assuming, without finding, that Credence received fair notice of which items Smith disputed, Smith has failed to show that the information she disputes was inaccurate or materially misleading. First, as to the account type and number, Smith does not dispute that the account type and number on the Credence tradeline are associated with the Credence account or that those items are correct for purposes of identifying and describing the Credence account. (See generally Am. Compl.; Opp'n). Rather than factual inaccuracy, Smith contends that Credence's use of its own account type and number renders the tradeline misleading because it does not accurately reflect the account

type and number of her AT&T account. (Opp'n at 3–4). Smith's credit report, however, makes clear that the Credence tradeline account type and number are associated with Credence, not with AT&T. (See Consumer Disclosure at 6–7, ECF No. 19-2).[3] The tradeline identifies the "original creditor" as AT&T but attributes the account to Credence, describes Smith's obligation to Credence as one to a "collection agency/attorney" and the account as "placed for collection," and identifies the "Pay Status" as "Collection." (Id. at 7). Smith points to no law that requires a debt collector to furnish the original creditor's information to a CRA. (See generally Am. Compl.; Opp'n). And the absence of any information about Smith's AT&T account in the Credence tradeline, other than to identify AT&T as the original creditor, (Consumer Disclosure at 6–7), does not render the tradeline misleading or otherwise misrepresent Smith's creditworthiness where the information regarding her account with Credence is correct.

Second, as to the payment history, Smith argues that the Credence tradeline is incomplete because it does not include her past payments on her AT&T account. (Am. Compl. ¶¶ 36–38; Opp'n at 5). But Smith cites no law that requires debt collectors, or other furnishers, to provide a consumer's history of payments to the original creditor or to the furnisher.[4] "The FCRA is voluntary. It 'does not impose upon information furnishers any affirmative duty to report consumer information to [CRAs].'" Scott v. JPMorgan Chase Bank N.A., No. 25-CV-02433 (OEM) (CHK), 2026 WL 2453513, at *5 (E.D.N.Y. Aug. 21, 2026) (rejecting plaintiffs' argument that defendant-furnisher provided inaccurate and incomplete information to CRA by failing to report plaintiffs' entire payment history). And "[i]n the end, . . . '[f]urnishing accurate historical information' about [a consumer's account], even if not their entire history, 'neither changes the accuracy of the report nor causes any confusion regarding [the consumer's] account status.'" Harris v. TransUnion, LLC, No. 1:25-CV-192-MLB-JKL, 2025 WL 2270156, at *8 (N.D.Ga. May 23, 2025), (quoting Marshall v. Robins Fin. Credit Union, No. 5:19-CV-260 (MTT), 2020 WL 620575, at *3 (M.D.Ga. Feb. 10, 2020)), report and recommendation adopted, No. 1:25-CV-192-MLB, 2025 WL 2270149

[3] While a court ordinarily may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the Consumer Disclosure was attached to the Motion to Dismiss, and there is no dispute as to its authenticity. Accordingly, the Court will consider this document.

[4] Smith cites the Metro 2 Credit Reporting Guidelines as support, (Am. Compl. ¶ 37, ECF No. 16), but she does not allege, or cite legal authority stating, that furnishers must comply with Metro 2 standards or that the Metro 2 Guidelines require a debt collector to report the consumer's history of payments to the original creditor, (see generally id.). In any event, alleged inaccuracies that "derive from purported deviations from the Metro 2 Guidelines[] fall into" the category of inaccuracies that may be "'misleading in such a way and to such an extent that [they] can be expected' to adversely affect credit decisions." Arriaza v. Experian Info. Sols., Inc., No. JKB-20-3073, 2021 WL 1019937, at *4 (D.Md. Mar. 17, 2021) (quoting Dalton v. Cap. Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001)). As stated above, Credence's alleged failure to report Smith's payment history where there is none is not misleading.

(N.D.Ga. July 30, 2025). Smith also does not allege that she has made payments to Credence since her debt was placed into collections and, therefore, fails to demonstrate how the absence of payment history on Credence's tradeline is inaccurate or misleading where there are no payments to report. (See Am. Compl. ¶¶ 36–38; Mot. Dismiss at 9).

Finally, as to the date of first delinquency, the Parties agree that furnishers must notify a CRA of the date of first delinquency so that the CRA can calculate the date on which the reported debt will "age off" the consumer's report. (See Mot. Dismiss at 7; Opp'n at 4); see also Seamans v. Temple Univ., 744 F.3d 853, 860 (3d Cir. 2014) (citing 15 U.S.C. § 1681a-2(a)(5)(A)). The Credence tradeline reports, and Smith does not dispute, that the "[e]stimated month and year [the Credence account] will be removed" from Smith's credit report is May 2031. (Consumer Disclosure at 7; see generally Am. Compl.; Opp'n). TransUnion would not have been able to calculate the "aging-off" date if it was not provided with the date of first delinquency. See Seamans, 744 F.3d at 860 ("[W]ithout [the date of first delinquency], the CRA would be unable to determine when the account had been placed for collection, rendering the 'aging-off' date impossible to calculate."). The obvious inference, then, is that Credence provided TransUnion with the date of first delinquency, as required under § 1681a-2(a)(5)(A), and that TransUnion used that date to calculate and report the "aging-off" date. The omission of the date of first delinquency from the tradeline itself does not render the report misleading or otherwise misrepresent Smith's creditworthiness where the report accurately reflects the balance and payment information (or lack thereof). See Harris, 2025 WL 2270156, at *6–7 ("[T]he relevant information for prospective users is the delinquency, irrespective of [the consumer's] partial payments prior to it.").

At bottom, Smith has failed to allege facts demonstrating an essential element of her claim against Credence, namely that the disputed information "was actually inaccurate or incomplete." Roberts, 131 F.4th at 253. The Court, therefore, will grant Credence's Motion to Dismiss.

**Conclusion**

For the foregoing reasons, it is hereby ORDERED that Credence's Motion to Dismiss (ECF No. 19) is GRANTED, and Smith's Amended Complaint (ECF No. 16) is DISMISSED. The Clerk shall MAIL a copy of this memorandum to Smith's address of record and PROVIDE a copy of the same to all counsel of record. Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly and CLOSE this case.

Very truly yours,

/s/

George L. Russell, III
Chief United States District Judge